UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW M. BIS,

                Plaintiff,          Civil Action No.: 14-11530
                                      Honorable Victoria A. Roberts
                v.              Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 13]

      Plaintiff Michael Bis appeals a final decision of Defendant

Commissioner of Social Security ("Commissioner") denying his applications

for Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI") under the Social Security Act (the "Act").  Both parties have filed

summary judgment motions, which were referred to this Court for a Report

and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  The Court

finds that the ALJ did not err in his evaluation of Bis's mental conditions

and did not run afoul of the pertinent regulations governing his analysis.

The Court further finds that the ALJ's decision is supported by substantial

evidence of record.  For these reasons, the Court **RECOMMENDS** that

- Bis's motion **[11]** be **DENIED**;

- the Commissioner's motion **[13]** be **GRANTED**; and

- the decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   BACKGROUND

At the time of the hearing, Bis was a forty-five year-old high school graduate with two years of college who had worked for fifteen years as a carpenter.  He stopped working on his alleged onset date due to anxiety over his divorce.  He claimed disability from this anxiety, as well as from osteoarthritis, disc disease, elbow and back fractures, bipolar disorder, attention deficit disorder ("ADD") and anemia.  (Tr. 227).

### A.   Procedural History

On September 22, 2011, Bis filed applications for DIB and SSI, alleging disability as of June 20, 2005.  (Tr. 198-210).  The claims were denied initially on February 2, 2012, and Bis filed a timely request for an administrative hearing.  (Tr. 125-29; 160-61).  At the June 4, 2012 hearing before an administrative law judge (ALJ"), Bis, represented by counsel, testified, as did a vocational expert ("VE").  (Tr. 44-91).  In a written decision dated September 26, 2013, the ALJ found Bis not disabled.  (Tr. 21-43).  On March 25, 2014, the Appeals Council denied review, making

2

the ALJ's decision the final decision of the Commissioner for purposes of this review.  (Tr. 1-6).  Bis filed for judicial review of the final decision on April 16, 2014.  [1].

### B.   Evidence in the Record

Bis's challenge to the ALJ's evaluation of his impairments is generally limited to his mental condition.[1]  Therefore, although the Court has thoroughly reviewed the record, only Bis's mental condition will be summarized below.  Other relevant records will be summarized, as needed, in the analysis section.

### 1.   *Plaintiff's Testimony and Subjective Reports*

As stated above, Bis alleged that he is disabled based in part on ADD, anxiety, and bipolar disorder.  (Tr. 227).  He testified that he also suffers from depression, has occasional visual and auditory hallucinations, and stopped working due to severe anxiety over his divorce.  (Tr. 51, 72-73, 78).  He reported that his conditions interfere with his ability to remember, complete tasks, concentrate, understand, follow instructions, handle stress and changes in routine, and get along with others.  (Tr. 255-

---

[1] Bis's only other main challenge involves the ALJ's alleged failure to perform a function-by-function analysis of his abilities, both physical and mental.  However, consideration of this argument does not require discussion of the evidence of his physical impairments and thus that evidence will not be summarized here.

3

56).  At his hearing, he agreed that he got along "okay" with others, but said

that he felt that some people did not like to talk to him and he felt

uncomfortable talking to strangers.  (Tr. 71-72).

Bis reported that he lives with his mother and that he can generally

care for his personal needs; although he wrote that he had little motivation

to shower, he testified that he showers every other day.  (Tr. 52, 54, 250-

51).  He stated that his mother prepares most of his meals and performs

the household chores, although he makes macaroni and cheese and

sandwiches for himself, and cleans his own room.  (Tr. 54-55; 252).  Bis

claims to have trouble focusing and sleeping (due to elbow pain), and that

he does not like being around crowds or people other than his family.  (Tr.

78-80, 82-82, 250-51, 254).  Bis said that he shops with his mother once a

month, and watches television and reads the newspaper daily.  (Tr. 57,

251, 253-54).  However, Bis testified that he has difficulty recalling what he

reads in the paper and cannot read books due to concentration issues.  (Tr.

74-75).

Bis's mother, sister and ex-wife jointly completed a third-party report

that generally corroborated Bis's subjective claims, but much of it was

completed in the first person, apparently by Bis himself.  (Tr. 234-41).

Bis spent some time in prison and jail between 2008 and 2013, and

4

stated that he had used cocaine, heroin and marijuana in the past, but was not using at the present time.  (Tr. 51-52, 62-65).

    2.   *Medical Evidence*

        a.   *Treating Sources*

In February 2008, Bis was prescribed Xanax by his orthopedic specialist for anxiety issues.  (Tr. 319; 329).  Later that year, Bis entered prison and underwent a mental health evaluation in early August.  (Tr. 589-95).  He denied having ever had an anxiety attack, having a history of psychiatric admissions or being suicidal.  (Tr. 592).  The evaluator concluded that Bis "does not present with signs or symptoms of a psychiatric condition.  He reported some mild anxiety after his divorce and surrounding his current legal problems."  (Tr. 594).  Bis was diagnosed with cocaine dependency and a personality disorder, and issued a Global Assessment of Functioning ("GAF") score of 65,[2] and no treatment was recommended.  (Tr. 589 & 595).  When he was transferred between

---

[2] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below.  Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning."  *Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 461 Fed. Appx. 433, 436 n.1 (6th Cir. 2012) (citations omitted).  Scores in the range of 61-70 indicate some mild symptoms.  *Karger v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 739, 745 (6th Cir. 2011).

facilities later that month, Bis was identified as having no mental health problems.  (Tr. 580; 583).  He neither reported nor received treatment for a mental health concern during his many other health care visits throughout this year-long incarceration period.  (Tr. 339-582).

Bis treated with Dr. Sameer Sawalha, who specializes in internal medicine, from October 2009 through July 2011.  (Tr. 632-49).  While the notes are generally illegible and do not appear to include any specific mental examination findings, it is clear that Dr. Sawalha prescribed Bis with Xanax and Prozac.  (*Id.*).  There are no treatment records from Dr. Sawalha after 2011, yet he completed a medical examination report for Bis in November 2013 stating that he last examined Bis that month, and rendering diagnoses that included severe anxiety, depression and ADHD. (Tr. 720).  Dr. Sawalha opined that Bis was limited in his ability to maintain sustained concentration or interact socially due to his "psychiatric documentation throughout [illegible] psychiatric tests [and] findings."  (Tr. 722).  However, while Dr. Sawalha specified the findings of his physical examination of Bis, he left blank the portion of his report in which he was supposed to detail specific the findings of his mental examinations.  (Tr. 721).

During this same period between 2009 and 2011, Bis also treated

6

with Dr. Firas Zouabi at Crescent Family Practice, who prescribed Xanax and Adderall.[3]  (Tr. 650-98).  Yet, the records show no evidence that Dr. Zouabi performed any mental examinations to support the need for those prescriptions.  (*Id.*).  Additionally, although there are no treatment records from Dr. Zouabi after 2011, he wrote a "To Whom It May Concern" letter in April 2013 opining that Bis was "unable to work due to his medical conditions," including "a sleep disorder [and] anxiety," and that he was "in need of psychiatric care," but was unable to afford it.  (Tr. 710).

In 2010, Dr. Sawalha referred Bis to Dr. Mark Greenbain for a psychiatric evaluation.  (Tr. 628-31).  Bis complained of anxiety, attention deficiency hyperactive disorder ("ADHD"), bipolar disorder, sleep issues and depression.  (Tr.628).  Dr. Greenbain's sparse records are difficult to read, but it clear that he found Bis to have memory problems, to have no substance abuse or sleep problems, to require psychological or cognitive evaluation, and to be an appropriate candidate for psychotherapy.  (Tr. 628-31).  Dr. Greenbain prescribed Adderall for Bis.  (Tr. 629-30).

Bis's records reflect a gap in treatment from 2011 until 2013, when he began treating at Wayne County Healthy Communities (WCHC).  He was

---

[3] In Bis's September 22, 2011, disability report, he indicated that Dr. Zouabi prescribed him Ambien and Wellbutrin as well for his mental conditions, and other medications for physical impairments.  (Tr. 230).

evaluated at WCHC in May and June of 2013, and represented that he had been diagnosed with bipolar disorder in 2009, and had a history of anxiety and ADHD.  (Tr. 712-13).  He reported to Ms. Cother Abdo that he suffered from hallucinations, sleep and eating disturbances, irritability, mood swings, racing thoughts, memory problems and paranoia.  (Tr. 712).  Although it does not appear that Abdo conducted any psychological testing, she diagnosed Bis with bipolar disorder, anxiety and ADHD, issued him a GAF score of 50 and referred him to outpatient therapy.  (*Id.*).

> b.    *Consultative and Non-Examining Sources*

On January 13, 2012, HCC Evaluations LLC conducted a consultative psychological examination of Bis.  (Tr. 699-701).  He reported having been diagnosed with bipolar disorder a year-and-a-half prior by his psychiatrist, but provided no records to support that claim.  (Tr. 699).  He claimed to have auditory hallucinations, anxiety, paranoia, and attention and concentration issues, but denied feeling depressed. (*Id.*).  Bis reported taking Xanax and Adderall, but not taking any other medications due to a lack of finances for psychiatric services.  (*Id.*).  A mental status examination was conducted and the evaluators diagnosed him with "possible" bipolar disorder with psychotic features, panic disorder, "possible" attention deficit disorder, and a history of polysubstance dependence in remission.  (Tr.

8

700-01).  Bis was issued a GAF score of between 50 and 55 and a guarded prognosis.  (Tr. 701).  However, the evaluators described their diagnoses as tentative, and appeared to question Bis's credibility.  "He may be telling the truth about hearing voices and feeling paranoid.  However, his prison records indicate that he was given a mental status exam by a psychologist who only found that he has anxiety problems.  He was drug seeking."  (Tr. 701).

On January 27, 2012, a psychologist acting as a consultant for the State Agency disability adjudicator examined Bis's medical records and determined that he had an organic mental disorder and a substance addiction disorder resulting in mild restriction of activities of daily living, mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence and pace, and no episodes of decompensation.  (Tr. 115).  She further found Bis moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, and sustain an ordinary routine without special supervision.  (Tr. 119).  Bis was therefore found not disabled, but limited to unskilled work.  (Tr. 121).

## C.   The ALJ's Application of the Disability Framework

DIB and SSI are available for those who have a "disability."  *See*

9

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months."  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by

analyzing five sequential steps.  First, if the applicant is "doing substantial

gainful activity," he or she will be found not disabled.  20 C.F.R. §

1520(a)(4); 20 C.F.R. § 416.920(a)(4).[4]  Second, if the claimant has not

had a severe impairment or a combination of such impairments[5] for a

continuous period of at least 12 months, no disability will be found.  *Id.*

Third, if the claimant's severe impairments meet or equal the criteria of an

impairment set forth in the Commissioner's Listing of Impairments, the

claimant will be found disabled.  *Id.*

If the fourth step is reached, the Commissioner considers its

assessment of the claimant's residual functional capacity ("RFC"), and will

find the claimant not disabled if he or she can still do past relevant work.

---

[4] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI
respectively, list the same five-step analysis.

[5] A severe impairment is one that "significantly limits [the claimant's]
physical or mental ability to do basic work activities."  §§ 1520(c); 920(c).

*Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following the five-step sequential analysis, the ALJ determined that Bis was not disabled. At Step One he found that Bis had not engaged in substantial gainful activity since his alleged onset date. (Tr. 26). At Step Two he found the following severe impairments: "residuals from an open reduction internal fixation and a left elbow fracture, degenerative disc disease to the lumbar spine, hypertension, anemia, history of poly-substance abuse in remission, anxiety, panic disorder and bipolar disorder." (Tr. 27).

At Step Three, the ALJ determined that none of Bis's severe impairments, either alone or in combination, met or medically equaled a listed impairment, specifically comparing his impairments to Listings 1.02 (Major dysfunction of a joint), 1.04 (Disorders of the spine), 4.01 (Cardiovascular system), 7.02 (Chronic anemia), 12.04 (Affective disorders), 12.06 (Anxiety-related disorders) and 12.09 (Substance

11

2:14-cv-11530-VAR-EAS   Doc # 15   Filed 03/25/15   Pg 12 of 25   Pg ID 846

addiction disorders).  (Tr. 27-29).  In making this comparison, the ALJ

concluded that Bis's mental impairments caused him moderate limitations

in his activities of daily living, moderate limitations in social functioning and

moderate limitations in his ability to maintain concentration, persistence

and pace, with no episodes of decompensation.  (Tr. 28).

Next, the ALJ assessed Bis's RFC, finding him capable of a limited

range of light work.  Relevant to Bis's appeal, the ALJ stated:

> Specifically, the claimant is able to lift up to 20 pounds
> occasionally and up to 10 pounds frequently, stand and/or walk
> up to 6 hours in an 8-hour workday and sit up to 6 hours in an
> 8-hour workday, but must alternate between sitting and
> standing up to two times per hour.  In addition, he can only
> occasionally push and/or pull with his left upper extremity . . .
> [and] is only able to occasionally stoop and perform gross
> manipulation with his left upper extremity . . . Mentally, he is
> limited to jobs that do not require complex written or verbal
> communication and is limited to simple routine tasks.  He must
> be employed in a low-stress job defined as requiring only
> occasional decision-making with no more than occasional
> changes in the work setting and must have work that is not at
> production rate or a production pace.  Lastly, the claimant is not
> to have more than brief and superficial interaction with the
> public and coworkers and he should not have any more than
> occasional supervision.

(Tr. 29).  At Step Four, the ALJ found that, based on the above RFC, Bis

could not perform his past relevant work as a carpenter.  (Tr. 37).  At Step

Five, the ALJ concluded that there were a significant number of other jobs

in the national economy that Bis could still perform, given his age,

12

education, vocational background and RFC, and thus he was not disabled under the Act.  (Tr. 37-38).  The ALJ's decision was supported by the testimony of the VE, who identified the jobs of small production assembler (2,500 jobs in the region) and visual inspector (1,000 jobs).  (Tr. 38).  The VE also testified that if a hypothetical claimant fitting Bis's profile were to be off-task more than 20% of the workday, would have more than two absences a month or needed to take longer-than-standard or unscheduled breaks during the workday, he would be precluded from all employment. (Tr. 89-90).

## II.   STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v.*

13

*McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards.  "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d  at 723.  *See also Rogers*, 486 F.3d at 249.  In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

Additionally, the "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and

14

not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 723,

727-29; *Rogers*, 486 F.3d at 242-43.  "Even when not controlling, however,

the ALJ must consider certain factors, including the length, frequency,

nature, and extent of the treatment relationship; the supportability of the

physician's conclusions; the specialization of the physician; and any other

relevant factors," and give appropriate weight to the opinion.  *Gentry*, 741

F.3d at 723.  In all cases, a treating physician's opinion is entitled to great

deference.  *Id.*

Similarly, although credibility determinations of witnesses are within

the province of the ALJ, "such determinations must find support in the

record."  *Rogers*, 486 F.3d at 241.  An ALJ must sufficiently explain the

bases of credibility determinations.  "[B]lanket assertions that the claimant

is not believable will not pass muster, nor will explanations as to credibility

which are not consistent with the entire record and the weight of the

relevant evidence."  *Id.* at 248.

When the Commissioner has failed to adhere to its procedures, the

harmless error standard applies and reversal is not warranted unless the

claimant has been prejudiced or deprived of substantial rights.  *Rabbers v.

Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009).  An ALJ's failure to

use an "adjudicatory tool" that does not change the outcome of the decision

15

is harmless.  *Id.* at 655-56.  On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless.  *Id.*; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *Gentry*, 741 F.3d at 729.  An "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Cole*, 661 F.3d at 939-40 (internal quotation marks and citation omitted).

With these standards in mind, this Court finds that the ALJ's determination that Bis is not disabled is legally sound and supported by substantial evidence of record.

## III.   ANALYSIS

Bis raises five challenges to the ALJ's decision.  He first argues that the ALJ violated the treating physician rule in his consideration of Abdo's diagnosis and GAF score; that the ALJ ignored and misconstrued the opinion of the consulting examiner; that the ALJ's mental RFC is unsupported and contradicted by the medical record and opinions; that the RFC fails to account for his mood disorder in terms of work-related functions; and, that the ALJ failed to perform a function-by-function analysis as required by the regulations.  Each argument is addressed in turn below.

16

A.    *Treating Physician Rule*

Bis argues that the ALJ failed to accord adequate weight to "treating physician" Abdo's opinion that Bis suffers from bipolar disorder and substance abuse in remission, and had a GAF score of 50.  However, there is no indication that Abdo is a "treating physician" or that she issued a "medical opinion" that warranted deference.

Treating physicians are defined as "your own physician, psychologist, or other acceptable medical sources who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."  20 C.F.R. § 416.502.  Acceptable medical sources include licensed doctors and psychologists, but not nurse practitioners, physician assistants or therapists.  20 C.F.R. § 404.1513(a)(1-4); (d)(1).  Here, Abdo's treatment note does not reflect that she is the type of licensed medical provider outlined in the regulations.  (Tr. 712).  Further, she evaluated Bis only once, and a single examination does not qualify her as a treating physician under the regulations  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

Moreover, it appears that Abdo did little more than parrot Bis's claims of mental impairment, including his alleged diagnosis of bipolar disorder and claimed hallucinations; Abdo's record includes no reference to a

17

mental status exam or psychological or psychiatric testing.  (Tr. 712-13).  In order to be entitled to deference, "[t]he opinion of a treating physician must be based on sufficient medical data."  *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (treating physician's opinion must be based on more than merely subjective reports); *see also Francis v. Comm'r of Soc. Sec.,* 414 Fed. Appx. 802, 804 (6th Cir. 2011) (a physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

This rule is particularly applicable here because there is no evidence that Bis was ever diagnosed with bipolar disorder in 2009, as he told Abdo. That year, Bis was being treated by family doctors Sawalha and Zouabi, neither of whom appears to have diagnosed Bis with bipolar disorder or to have even conducted any examinations necessary to render such a diagnosis.  (*See* Tr. 632-98, 710, 721-22).  The ALJ accurately pointed out that Bis's complaints of bipolar disorder and hallucinations surfaced only after he applied for disability.  (Tr. 36).

The ALJ additionally explained that he gave little weight to Abdo's determination that Bis had a GAF score of 50 because that score only reflected a specific moment in time that was of little value when determining disability; because of Bis's lack of treatment and normal behavior while in

18

prison; and because the ALJ would have expected a more aggressive treatment protocol if Bis's mental impairments were so severe.  (Tr. 34; 36). Thus, the ALJ properly considered Ms. Abdo's treatment records as required by the regulations.

### B.    Consulting Examiner Opinion

Bis argues that the ALJ ignored the consulting examiner's opinions and GAF score of 50-55, which the ALJ characterized as indicative of "at most moderate findings in the area of social, occupational or educational functioning."  (Tr. 36).  Bis argues that a GAF score of 50 is indicative of severe limitations.

Unlike opinions of treating physicians, the opinions of examining physicians are not entitled to any "special degree of deference"; while ALJs are required to consider them, they are not bound by them.  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  Here, the ALJ did consider the consulting psychologist's examination notes and "tentative" opinions, including the "possible" diagnoses of bipolar disorder and ADD, in light of all of the evidence in the record.  (Tr. 36).  The ALJ thoroughly discussed his reasons for his finding that Bis's limitations were not so severe so as to render him disabled, (Tr. 36-37), and the alleged mischaracterization of the consultant's GAF scoring is an insufficient reason for finding error

19

warranting a remand.

### C.    Support for Mental RFC

Bis argues that the record evidence does not support the ALJ's

mental RFC because he mischaracterized Abdo's GAF score range, and

found that Bis's social functioning was more limited than that found by the

disability adjudicator's psychological consultant, who examined Bis's

medical records.  The analysis set forth above regarding the ALJ's

treatment of Abdo's GAF scoring applies equally here.

Bis's argument as it relates to psychological consultant is

nonsensical.  If the ALJ had accorded greater weight to the psychologist's

opinion, Bis would be found to suffer only mild limitations in activities of

social functioning (Tr. 115), whereas the ALJ found that that Bis was

moderately limited in that area.  (Tr. 35).  Bis cannot reasonably argue that

the ALJ's finding that he has more limited social functioning could be

considered reversible error in his favor.

### D.    Mental RFC and Work-Related Functions

Bis argues that the ALJ's mental RFC is unsupported by a medical

assessment.  He acknowledges that the psychological consultant's

assessment of his RFC indicated that he was limited to simple unskilled

work, (Tr. 118-20), and that the ALJ gave that opinion some weight.  (Tr.

20

36).  Yet, Bis creatively argues that the ALJ's finding that he was more limited socially than found by the consultant renders the ALJ's reliance on the consultant's mental RFC completely invalid.  In actuality, the regulations do not require the ALJ to adopt the findings of a single psychologist or physician.  Rather, "the ALJ's assessment of [Bis's] residual functional capacity is driven by this consideration of 'all of the relevant medical and other evidence' . . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007) (quoting 20 C.F.R. § 416.945(a)(3)).

Bis further argues that the ALJ failed to provide a narrative explanation for the mental components of his RFC finding, and did not consider his allegations that he needs to lie down frequently and take unscheduled breaks, which the VE testified would preclude him from competitive work.  Yet, the ALJ did specifically lay out his reasons for his RFC.  (Tr. 29-31, 34-36).  Further, an ALJ is not required to discuss every piece of record evidence, and is not required to rely upon assumptions that he does not find completely credible.  *Kornecky*, 167 Fed. Appx. at 508 (an ALJ need not directly address every piece of evidence in decision); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) ("[T]he ALJ did not err in declining to accept the vocational expert's testimony that there are no available jobs, as it was based on the

21

assumption that plaintiff's testimony was entirely credible.").  The ALJ found

Bis only partially credible, and no treating or other provider corroborated

that Bis needed to frequently lie down or take breaks.  (Tr. 702-708; 710;

720-22).  Thus the ALJ's refusal to incorporate these limitations into his

RFC is not error.

### E.    Function-By-Function Analysis

Finally, Bis argues that the ALJ erred in failing to perform a function-

by-function analysis as required by SSR 96-8p.  SSR 96-8p requires the

ALJ to individually assess the exertional and non-exertional capacities of a

claimant in determining the RFC.  1996 SSR LEXIS 5, 1996 WL 374184

(July 2, 1996).  However, it "does not require the ALJ to discuss those

capacities for which no limitation is alleged," nor does it "require ALJs to

produce such a detailed statement in writing."  *Delgado v. Comm'r of Soc.*

*Sec.*, 30 Fed. Appx. 542, 547-48 (6th Cir. 2002) (internal citations and

quotations omitted).  Rather, the ALJ "need only articulate how the

evidence in the record supports the RFC determination, discuss the

claimant's ability to perform sustained work-related activities, and explain

the resolution of any inconsistencies in the record."  *Id.* at 548 (internal

citations and quotations omitted).

Here, the ALJ thoroughly examined the record evidence, discussed

22

Bis's abilities as they were supported by both his subjective reports and the objective medical evidence, resolved conflicts between the two, and issued an RFC that thoroughly outlined his physical and mental limitations.  This was all the ALJ was required to do.  *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719, 729 (6th Cir. 2013).

## IV.   CONCLUSION

The Court is satisfied that the ALJ's decision is legally sound and supported by substantial evidence of record.  As a result, the Court **RECOMMENDS** that Bis's Motion for Summary Judgment **[11]** be **DENIED**, the Commissioner's Motion **[13]** be **GRANTED** and this case be **AFFIRMED**.

> s/Elizabeth A. Stafford
> ELIZABETH A. STAFFORD
> United States Magistrate Judge

Dated: March 25, 2015

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any

23

further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF

24

System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 25, 2015.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager